[J-20-2015][M.O. – Todd, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 26 WAP 2014 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered November 25, 2013 at |
| | : | No. 45 WDA 2011, vacating the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered December 7, 2010 at No. CP- |
| STEVENSON LEON ROSE, | : | 02-CR-0000810-2008 and remanding. |
| | : | |
| Appellee | : | ARGUED:  April 8, 2015 |

## CONCURRING OPINION

**MR. CHIEF JUSTICE SAYLOR**                            **DECIDED: NOVEMBER 18, 2015**

I join the majority opinion, subject to a few modest differences.

Initially, I agree with the majority, at least as a general rule, that the *ex post facto* prohibition is implicated when a legislative enactment increases the adverse legal consequences of criminal *acts* completed before the law's effective date.  In other words, where the relevant conduct is fully consummated before the implementation of a crime-creating or penalty-enhancing law, the date of the offense, for *ex post facto* purposes, generally should be the date the conduct occurred, and subsequently ensuing *results* should be treated as relating back to such date.  Along these lines, and consistent with the majority opinion, I am unpersuaded by the Commonwealth's argument that the word "crime," as utilized in the seminal description of *ex post facto*

laws in *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798), necessarily means a fully realized criminal offense, encompassing all elemental results.

My differences with the majority opinion are as follows. First, like Mr. Justice Eakin, I find it preferable to avoid the "disadvantage" and "substantial personal rights" rubric from which the Supreme Court of the United States appears to have distanced itself. *See* Concurring Opinion, *slip op.* at 1-2 (Eakin, J.) (citing *Collins v. Youngblood*, 497 U.S. 37, 45, 110 S. Ct. 2715, 2721 (1990)). That said, conceptually, I acknowledge that I have less difficulty, on my own part, with a measured use of these terms in the *ex post facto* arena.

Next, I differ with the majority's depiction that the Commonwealth's position is, in effect, that "the prohibition against *ex post facto* laws does not apply to unintentional crimes." Majority Opinion, *slip op.* at 19. Indeed, nowhere in its brief does the Commonwealth contend that legislation subjecting a defendant who previously was convicted of and sentenced for *any* fully realized crime to enhanced penalties would not be proscribed. Rather, the Commonwealth's discrete focus is upon crimes that are unconsummated as of the effective date of intervening legislation.

I also find this focus upon intentionality or unintentionality to be somewhat distracting and, accordingly, I would address the Commonwealth's contentions in terms of the broader requirements for culpability set forth in the Pennsylvania Crimes Code, 18 Pa.C.S. §302 (indicating, subject to one express exception, that "a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require").[1] Within each of these categories, with regard to their conduct,

---

[1] The Crimes Code's framework, in this regard, adopted from the Model Penal Code, served to "prun[e] from the lexicon a plethora of common-law culpability terms, leaving four core terms." *Commonwealth v. Roebuck*, 612 Pa. 642, 649, 32 A.3d 613, 618 (2011).

citizens have the ability to conform themselves to the requirements of the law upon fair notice. Moreover, as the majority otherwise acknowledges, such notice of the criminal-law consequences of a failure to conform traditionally has been a recognized concern of *ex post facto* jurisprudence. *See* Majority Opinion, *slip op.* at 18-19 (citing, *inter alia*, *Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 2451 (1987), *disapproved in part on other grounds Calif. Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n.3, 115 S. Ct. 1597, 1602 n.3 (1995)).

From my point of view, the notice concern directly pertains here, albeit that the Supreme Court has seen fit to invoke broader fairness principles where conceptual differences have arisen in discussing notice or reliance upon their own terms. *Accord id.* at 20-21 (citing *Carmell v. Texas*, 529 U.S. 513, 531 n.21, 120 S. Ct. 1620, 1632 n.21 (2000)). In the present setting, perhaps recourse to the broader principles aids in avoiding a digression into whether a defendant truly would or would not have engaged in some sort of a mental penalty calculus, when the salient consideration is the requirement for the government to provide notice pertinent to conduct in the first instance.